JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Eclipsys Corporation

(b) County of Residence of First Listed Plaintiff: Not Applicable
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
See Attached

## DEFENDANTS

Bryan Dove

County of Residence of First Listed Defendant: Chester County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause: See Attached

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE 8/31/09

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Plaintiff's Attorney**
Paul G. Nofer, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 S. Broad Street – 4th Floor
Philadelphia, PA 19102-5003

**Brief Description of Cause**

The defendant, a former employee of plaintiff, has misappropriated trade secrets and breached his contract and fiduciary duties.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Eclipsys Corp., Three Ravinia Dr., Atlanta, GA 30346

Address of Defendant: Bryan Dove, 220 Tall Trees Circle, Downingtown, PA 19335

Place of Accident, Incident or Transaction: Malvern, Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes ☐ No ☒

Does this case involve multidistrict litigation possibilities? Yes ☐ No ☒

*RELATED CASE, IF ANY:*

Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes ☐ No ☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, Paul G. Nofer, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 8/31/09 [signature] Attorney-at-Law 52241 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 8/31/09 [signature] Attorney-at-Law 52241 Attorney I.D.#

APPENDIX G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Eclipsys Corporation :
V. : Civil Action No: ________
Bryan Dove :

DISCLOSURE STATEMENT FORM

Please check one box:

☒ The nongovernmental corporate party, Eclipsys Corporation, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☐ The nongovernmental corporate party, ________, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

________
________
________
________

8/31/09 [signature]
Date Signature

Counsel for: Eclipsys Corporation

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a) WHO MUST FILE; CONTENTS. A nongovernmental corporate party must file two copies of a disclosure statement that:
  (1) identifies any parent corporation and any publicly held corporation owning10% or more of its stock; or
  (2) states that there is no such corporation.

(b) TIME TO FILE; SUPPLEMENTAL FILING. A party must:
  (1) file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and
  (2) promptly file a supplemental statement if any required information changes.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ECLIPSYS CORPORATION., a Delaware corporation<br>Plaintiff<br>v.<br>BRYAN DOVE, an individual<br>Defendant. | ) | Civil Action. No. ________ |

## COMPLAINT

Plaintiff Eclipsys Corporation ("Eclipsys," "Company" or "Plaintiff") commences this action against Defendant Bryan Dove ("Dove" or "Defendant") and alleges the following:

## INTRODUCTION

1. Eclipsys brings this action as a result of the unlawful conduct of its former employee, Bryan Dove. The action is brought in order to restrain Dove from breaching his contractual obligations to Eclipsys and to prevent him from misappropriating or otherwise disclosing Eclipsys' trade secrets and confidential information in working for his new employer, Microsoft Corporation ("Microsoft"), a direct competitor of Eclipsys.

2. Founded in 1995, Eclipsys is a publicly traded company with over 2,800 employees throughout the United States, Canada, India, Asia, and the Middle East, with approximately 2,200 such employees in North America.

3. Eclipsys is a pioneer and leading provider of software solutions to companies in the healthcare industry, providing advanced integrated clinical, revenue cycle and performance management software, and professional services that help healthcare organizations improve clinical, financial, and operational outcomes.

4. From 2006 to 2008, Eclipsys invested more than $229 million in research and development costs, with $79.6 million expended in 2008 alone.

5. Eclipsys also develops and licenses its proprietary software and content that is designed for use in connection with many of the key clinical, financial and operational functions that healthcare organizations require.

6. Eclipsys markets its software to healthcare providers of many different sizes and specialties, including community hospitals, large multi-entity healthcare systems, academic medical centers, outpatient clinics and physician practices.

7. Defendant Dove spent over four years as a leading software architect and developer in Eclipsys' product development division, most recently as a Director of Product Incubation and Architecture, during which time he served as a lead software architect responsible for software design and development of Eclipsys' core platform and software engineering on Eclipsys' products. In that capacity, Dove was permitted access to Eclipsys' valuable, confidential, and proprietary information.

8. During his tenure at Eclipsys, Dove was responsible for new product initiatives and architectural plans and strategy across Eclipsys' entire product suite, and managed multiple commercial software teams in North America and India to deliver highly complex, high quality products for the healthcare market. Dove was integral to various software design and development projects, in which Eclipsys had expended substantial sums in research and development and which were, and are, strategically important to Eclipsys' business.

9. In connection with his privileged exposure to Eclipsys' confidential information, trade secrets and other intellectual property, Dove entered into an Employment Agreement on Intellectual Property and Confidentiality ("Employment Agreement") and a Proprietary Information Protection Agreement ("PIP Agreement") under which he agreed, *inter alia*, that, he will not, directly or indirectly, on behalf of himself or any other person, company or entity:

- utilize or disclose to anyone outside of Eclipsys, either during or after his employment with Eclipsys, any information provided to or obtained by him in the course of his employment with Eclipsys, trade secrets or other confidential information of Eclipsys, or any information received by Eclipsys in confidence from or about third parties;

- solicit or participate in soliciting any customer or potential customer for any software or services that are competitive with or similar to Eclipsys' software or services;
- provide or participate in providing to any customer or potential customer any software or services that are competitive with or similar to Eclipsys' software or services;
- participate in the research, development or product management of any software that is or is intended to be directly competitive in the marketplace with software for which Dove had direct research, development or product management responsibilities during his last 24 months of his employment with Eclipsys; or
- disclose or use for any purposes adverse to Eclipsys' interests, any confidential information concerning any vendor or client used by or serviced by Eclipsys at any time during the last 24 months of his employment with Eclipsys.

10. Despite these written covenants, shortly after resigning from his position as Director of Eclipsys and principal software architect responsible for Eclipsys' past, present and future software design and development, Dove started his new employment at Microsoft as the Chief Architect of Microsoft's Health Solutions Group.

11. Since its formation in 2006, Microsoft's Health Solutions Group has sought aggressively to enter the market for software solutions for the healthcare industry in direct competition with Eclipsys, an established provider and pioneer of software solutions to companies in the healthcare industry.

12. Microsoft's Amalga suite of healthcare products contains a number of software solutions that are directly competitive with those products on which Dove worked at Eclipsys and which are marketed to prospective and existing customers of Eclipsys both throughout the United States and overseas.

13. Microsoft has represented to Eclipsys that it intends to dominate the health solutions industry and to usurp Eclipsys' business in an effort to put Eclipsys out of business.

14. Dove's employment as Chief Architect of Microsoft's Health Solutions Group places him in breach of the Employment Agreement and the PIP Agreement.

15. Even in the absence of the obligations and restrictive covenants in the Employment Agreement and the PIP Agreement, on information and belief, Dove has

misappropriated and/or will inevitably misappropriate Eclipsys' confidential and proprietary information by disclosing and using this information during his employment for the benefit of Microsoft.

16. Such misappropriation will permit Microsoft to unfairly and unlawfully advance the development of its products and divert customers to Microsoft through the use of Eclipsys' confidential and proprietary information and, in accordance with Microsoft's stated intention, will allow Dove and Microsoft to unfairly and unlawfully erode Eclipsys' well-established share of the health solutions market.

17. This will result in substantial and irreparable harm to Eclipsys, which will be impossible to accurately measure and for which no adequate monetary remedy exists. Eclipsys therefore seeks preliminary and permanent injunctive relief to prevent further harm by Dove.

18. Specifically, Eclipsys seeks an injunction enjoining Dove from all acts and omissions in violation of the Employment Agreement and PIP Agreement, including, but not limited to:

- directly or indirectly using or disclosing to anyone outside of Eclipsys any information provided to or obtained by him in the course of his employment with Eclipsys, trade secrets or other confidential information of Eclipsys, or any information received by Eclipsys in confidence from or about third parties;

- soliciting or participating in the solicitation of any customer or potential customer for any software or services that are competitive with or similar to Eclipsys' software or services;

- providing or participating in providing to any customer or potential customer any software or services that are competitive with or similar to Eclipsys' software or services;

- participating in the research, development or product management of any software that is or is intended to be directly competitive in the marketplace with software for which Dove had direct research, development or product management responsibilities during his employment with Eclipsys; and

- using or disclosing for any purposes adverse to Eclipsys' interests, any confidential information concerning any vendor or client used by or serviced by Eclipsys at any time during his employment with

Eclipsys.

## PARTIES

19. Eclipsys is a Delaware corporation with its principal place of business in and headquarters located in Atlanta, Georgia. Eclipsys is a leading provider of information solutions that help hospitals and health systems more-effectively manage the business of healthcare and achieve measurable and sustainable, improved outcomes for corporate healthcare clients.

20. On information and belief, Dove is an individual and citizen of the Commonwealth of Pennsylvania, who resides or resided in Downingtown, Pennsylvania. From December 2004 until he resigned in June 2009, Dove was employed by Eclipsys as a Director of Product Incubation and Architecture and served as a principal software architect for Eclipsys' software design and development. During this time, Dove was a member of Eclipsys' product development division, located at the Company's Mid-Atlantic Region office in Malvern, Pennsylvania, which is one of only three primary research and development centers for Eclipsys.

21. On information and belief, Dove recently started his employment with Microsoft as a Chief Architect for Microsoft's Health Solution Group.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1), as it arises between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

23. Personal jurisdiction exists over Dove because he has a domicile in Pennsylvania and/or because he both worked for Eclipsys and executed his Employment Agreement and the PIP Agreement within the Commonwealth.

24. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because Dove resides in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## GENERAL ALLEGATIONS

**Introduction to Eclipsys**

25. Eclipsys has long been recognized and established as a leading provider of software solutions to companies in the healthcare industry.

26. For nearly four decades, hundreds of highly respected academic and community hospitals have trusted Eclipsys' products to deliver information support as they care for their sickest, highest-acuity patients.

27. These solutions support the delivery of connected, coordinated care, servicing the healthcare industry at all stages from the patient's visit to the Emergency Department or ICU, the inpatient nursing unit, ambulatory clinic, and back home for follow-up care.

28. Eclipsys' customers include healthcare providers of many different sizes and specialties, including community hospitals, large multi-entity healthcare systems, academic medical centers, outpatient clinics and physician practices.

29. As an established provider and pioneer of software solutions to companies in the healthcare industry, Eclipsys directly competes with Microsoft's Health Solutions Group in the market for software solutions for the health care industry. For example, Eclipsys is informed and believes, and therefore alleges, that Microsoft's Amalga suite of healthcare products has been marketed and/or sold to clients or prospective clients of Eclipsys.

30. Based largely upon its long experience in the market, its broad spectrum of products, and its unique trade secrets and other intellectual property, Eclipsys enjoys a major share of the health solutions software market.

31. Eclipsys' status as a leader in the field has been recognized on numerous occasions, including, by way of example, receiving among the highest rankings in reports published by the Centers for Medicare & Medicaid Services (CMS) for performance across all CMS criteria and in reports published by other third party sources. The vast majority of the top-

ranked U.S. hospitals named in U.S. News & World Report's Honor Roll use one or more of Eclipsys' solutions.

32. A substantial potion of Eclipsys' success is built on the unique confidential and proprietary software design and software architecture that support its products, together with other confidential and proprietary information.

33. Eclipsys takes great lengths to protect this intellectual property, including, but not limited to, requiring employees to sign employment agreements and PIP agreements, limiting access to all confidential and proprietary information on a need-to-know basis, password protecting all electronic databases, and employing all personnel subject to the terms of an Employment Handbook, which provides, *inter alia*:

> *Employees may not disclose Confidential Information ... to any third party who (i) does not need to know the information to perform duties for Eclipsys and (ii) is not subject to a confidentiality agreement to protect the information.*

**<u>Dove's Employment With Eclipsys</u>**

34. Bryan Dove was hired by Eclipsys in December 2004. Dove terminated his employment with Eclipsys on June 26, 2009.

35. During more than four years of employment at Eclipsys, Dove was a Director of Product Incubation and Architecture and served as a senior software engineer and lead software architect for Eclipsys' software design and development. In that capacity, Dove was responsible for new software product initiatives and software architectural strategy across much of Eclipsys' suite of healthcare software products, including Eclipsys' pharmacy, lab, clinical documentation and other product lines. Most recently, Dove served as a principle architect responsible for the design and implementation of a central core software architecture vital to Eclipsys' business and business strategy. In addition, Dove was also responsible for and has direct knowledge of a proprietary software development project for a confidential strategic initiative that has not yet been commercialized.

36. During his tenure at Eclipsys, Dove had access to Eclipsys' confidential and proprietary source code and algorithms, internal software coding structure, and proprietary software architecture and architectural plans. Dove was intimately involved with the design and development of Eclipsys' software platform plans and software engineering for a host of Eclipsys' past, present and future products.

37. In addition, because Dove's approval was required for adoption of new or revised source codes for much of Eclipsys' suite of healthcare software products, Dove also routinely conducted reviews of, and had privileged access to, such highly confidential and proprietary source codes.

38. During his tenure at Eclipsys, Dove also managed a number of commercial software teams that were distributed globally both in North American and India and assisted Eclipsys to deliver many of its high quality products to customers in the health care market both in the United States and overseas. As a result of Dove's participation in numerous client forums and working groups, Dove also gained access to other confidential and proprietary information of Eclipsys.

39. On information and belief, before his employment with Eclipsys, Dove lacked any specific experience with the commercial health solutions segment of the market that is serviced by Eclipsys and which Microsoft seeks to directly compete through Microsoft's Health Solutions Group.

40. On information and belief, before his employment at Eclipsys, Dove had not worked in the enterprise healthcare solutions business, and it is only as a result of his more than four years at Eclipsys that he has gained specific experience in this particular field and valuable access to Eclipsys' highly confidential and proprietary information relevant to this technical field and business.

**Dove's Obligations to Eclipsys**

41. In December 2004, Dove signed the Employment Agreement, which was included as a part of Dove's new hire package. In signing the Employment Agreement, Dove

agreed, *inter alia*, that he "will not disclose Confidential Information to anyone who is not an employee of Eclipsys, nor to any Eclipsys employee who does not have a need to know."

42. In 2008, Dove signed the PIP Agreement in connection with his employment and access to, *inter alia*, "trade secrets and confidential information of Eclipsys and its customers." In signing the PIP Agreement, Dove agreed "that the software and services that Eclipsys develops, provides and markets are unique [and] that Eclipsys is engaged in a business which is highly specialized, the identity and particular needs of Eclipsys' customers and vendors are not generally known, and the documents and information regarding Eclipsys' customers, vendors, services, software, methods of operation, sales, pricing, and costs are highly confidential and constitute trade secrets."

43. Under the PIP Agreement, Dove agreed to protect Eclipsys' confidential information in the following terms:

> *1. **Protection of Confidential Information**. I will not, without Eclipsys' prior written permission, directly or indirectly utilize for any purpose other than performance of my employment duties to Eclipsys, or disclose to anyone outside of Eclipsys, either during or after my employment with Eclipsys, any information provided to or obtained by me in the course of my employment with Eclipsys, trade secrets or other confidential information of Eclipsys, or any information received by Eclipsys in confidence from or about third parties, as long as such matters remain trade secrets or confidential ("Confidential Information").*

44. Under the PIP Agreement, Dove also agreed to protect Eclipsys' proprietary interests and to not compete with Eclipsys during the months after his termination as follows:

> *6. **Protection of Proprietary Interests**. I agree as follows:*
>
> *(a) For a period of 12 months after termination of my employment with Eclipsys for any reason, I will not, directly or indirectly, on behalf of myself or any other person, company or entity:*
>
> > *(i) solicit or participate in soliciting any Specified Customer (as defined below) for any Covered Software or Services (as defined below); or*

> *(ii) provide or participate in providing to any Specified Customer any Covered Software or Services.*
>
> *For these purposes:*
>
> *A 'Specified Customer' is (i) a customer of Eclipsys, or (ii) a potential customer of Eclipsys with which Eclipsys was, at any time within 270 days before the termination of my employment with Eclipsys, engaged in active sales discussions or negotiations, in case of either a customer or potential customer, if I had direct contact with that customer or potential customer in my capacity as an employee of Eclipsys, or I possess Confidential Information about Eclipsys' relationship or discussions or negotiations with that customer or potential customer that I learned during or as a result of any employment with Eclipsys.*
>
> *'Covered Software or Services' means software or services that are competitive with or similar to software or services offered, designed, developed or distributed by Eclipsys.*
>
> *(c) For a period of 24 months after termination of my employment with Eclipsys for any reason, I will not, directly or indirectly, on behalf of myself or any other person, company or entity, disclose or use for any purposes adverse to Eclipsys' interests, any Confidential Information (including without limitation identity or contract or relationship terms) concerning any vendor or client used by or served by Eclipsys at any time during the last 24 months of my employment with Eclipsys.*
>
> *(e) For a period of 12 months after termination of my employment with Eclipsys for any reason, due to the inevitability of disclosure of Eclipsys Confidential Information, I will not directly or indirectly, on behalf of myself or any other person, company or entity, participate in the research, development or product management of any software that is or is intended to be directly competitive in the marketplace with software for which I had direct research, development or product management responsibilities during the last 24 months of my employment with Eclipsys.*

45. In signing the PIP Agreement, Dove also agreed that injunctive relief was appropriate in the event of any actual or threatened breach of its provisions:

> *9.* ***Injunctive Relief and Attorney Fees****. In the event of a breach or a threatened breach of this Agreement, by me, I acknowledge that Eclipsys will face irreparable injury which may be difficult to calculate in dollar terms and that Eclipsys shall be entitled, in addition to remedies otherwise available at law or in equity, to temporary restraining orders and preliminary injunctions and final injunctions enjoining such breach or threatened breach. I agree, that should this Agreement be enforced through legal proceedings in court or arbitration, the prevailing party*

*shall be responsible to the non-prevailing party for all attorney's fees and costs reasonably incurred in connection therewith.*

**<u>Dove's Access to Trade Secrets and Other Confidential and Proprietary Information of Eclipsys</u>**

46. As set forth above and alleged herein, during the course of his employment and pursuant to the terms of the Employment Agreement and the PIP Agreement, and the conditions of the Employee Handbook, Dove participated in the research, design, and development of a number of Eclipsys' past, present, and future software architecture and software products and was privy to Eclipsys' highly confidential and proprietary information.

47. The Eclipsys' trade secrets to which Dove had access are critical to its business. Eclipsys has developed these trade secrets through the investment of substantial amounts of time and money, including a significant portion of over $229 million in research and development costs expended by Eclipsys in 2006 through 2008 alone.

48. Eclipsys has taken reasonable measures to protect the confidentiality of its trade secrets and other confidential and proprietary information by, among other things, requiring employees to sign employment agreements and PIP agreements, limiting access to all confidential and proprietary information on a need-to-know basis, password protecting all electronic databases, and employing all personnel subject to the terms of an Employment Handbook, which provides, *inter alia*, "*Employees may not disclose Confidential Information ... to any third party who (i) does not need to know the information to perform duties for Eclipsys and (ii) is not subject to a confidentiality agreement to protect the information.*"

49. Eclipsys' policies and procedures with respect to proprietary, confidential and trade secret information were well known because of the requirement that employees of Eclipsys agree to the obligations and covenants contained in the employment agreements, PIP Agreement, and Employee Handbook.

**<u>Dove's Departure to Microsoft's Health Solutions Group</u>**

50. In June 2009, Dove announced that he intended to resign from Eclipsys. In an exit survey, completed on June 19, 2009, Dove stated that he was resigning from Eclipsys

because he was seeking a better employment opportunity elsewhere, as a Chief Architect.

51. Dove stated that he was undecided as to where his next employment would be, but that he had been actively considering his resignation since October 2008.

52. His employment with Eclipsys terminated on June 26, 2009.

53. Eclipsys recently discovered that Dove had taken a position as Chief Architect of Microsoft's Health Solutions Group.

54. Eclipsys is informed and believes, and therefore alleges that, Microsoft's Health Solutions Group was formed as recently as 2006, with a view to Microsoft aggressively leveraging its existing relationship with many vendors of health-specific software in order to enter into, and take a considerable share of, the healthcare solutions market.

55. Microsoft's Health Solutions Group is developing a suite of software products, under the name Amalga, which seeks to provide a competitive variety of software solutions to the healthcare industry as Eclipsys. These include, by way of example only, the following, recently released products that compete directly with Eclipsys' products:

- Amalga Unified Intelligence System, which is intended to coordinate the retrieval of data contained in disparate systems across a health enterprise, in competition with Eclipsys' integrated access management products; and
- Amalga Hospital Information System, which is an integrated hospital information system, in competition with Eclipsys' Sunrise Enterprise products.

56. Although new to the health solutions business, Microsoft has quickly moved into direct competition with Eclipsys. It is developing and marketing products that are competitive with and/or marketed as substitutes for products that have been developed and offered by Eclipsys.

57. On information and belief, Microsoft has solicited and continues to solicit business from hospitals and health groups throughout the United States and overseas, many of which are customers or prospective customers of Eclipsys.

58. During recent years, Microsoft has been aggressively seeking information and data about its competitors' products, including Eclipsys, from hospitals and health groups. By way of example only, during 2008, Eclipsys discovered that Microsoft had obtained from a major Eclipsys customer in California a number of software queries and related data that revealed that Microsoft had obtained inappropriate access to Eclipsys' proprietary database schema.

59. Eclipsys further discovered from a number of its customers that Microsoft personnel had been asking them to provide confidential information concerning Eclipsys' software, all of which was protected and subject to non-disclosure agreements. Eclipsys is informed and believes, and therefore alleges, that, through such unlawful strategies, Microsoft is undertaking a systematic effort to access and exploit Eclipsys' confidential and proprietary information in order to hasten the development of its own newly-established suite of products.

60. Microsoft's aggressive entry into the market place and its conduct in both gaining access to competitors' confidential and proprietary information and selectively hiring technical leads, such as Dove, from those competitors, evidences an intent to unfairly and unlawfully advance the development of its products by the usurpation of competitors' intellectual property and proprietary information.

61. The same is consistent with the stated intention of the head of Microsoft's Health Solutions Group, Peter Neupert, who, at the time Microsoft's Health Solutions Group was established, informed his counterpart at Eclipsys that Microsoft intended to dominate the healthcare software market in such a way as to put Eclipsys out of business and to make it "the next Lotus."

62. Eclipsys is further informed and believes, and therefore alleges, that Dove is working for Microsoft as Chief Architect in support of its Amalga suite of products. In that role, Dove has necessarily participated, or will necessarily participate, in the research, design, and development of source code, algorithms, software architecture and coding structures involving Amalga's suite of Microsoft products and, in so doing, has misappropriated and/or will

inevitably misappropriate Eclipsys' trade secrets and confidential and proprietary information.

63. On information and belief, Dove has, directly or indirectly, solicited or participated in the solicitation or servicing of Eclipsys' customers with Microsoft's software or services that are competitive with Eclipsys' software or services and/or has participated in the research, design, and/or development of source code, algorithms, software architecture and coding structures involving Microsoft's products that are competitive with Eclipsys' past, present, or future products.

64. Given that Microsoft is aggressively moving into the market and has stated an intention to do so at the expense of Eclipsys, Dove's conduct in breaching the covenants and obligations contained in the Employment Agreement and the PIP Agreement and in misappropriating Eclipsys' trade secrets will lead Eclipsys to suffer significant and irreparable harm that will be impossible to accurately measure and for which no adequate monetary remedy exists.

## COUNT 1

## BREACH OF CONTRACT

65. Eclipsys repeats and realleges each and every allegation contained in Paragraphs 1 through 64 of this Complaint as though fully set forth herein.

66. As set forth above, Eclipsys and Dove are parties to the Employment Agreement. Eclipsys has fully performed each and every covenant, term, and condition required on its part pursuant to the Employment Agreement, and the Employment Agreement remains valid and enforceable.

67. Dove's acts and omissions described above amount to a breach of Paragraph 1 of the Employment Agreement, pursuant to which Dove agreed to abstain from using or disclosing to anyone outside of Eclipsys, including after the termination of his employment, any information provided to or obtained by him in the course of his employment

with Eclipsys, trade secrets or other confidential information of Eclipsys, or any information received by Eclipsys in confidence from or about third parties.

68. Likewise, Eclipsys and Dove are parties to the PIP Agreement. Eclipsys has fully performed each and every covenant, term, and condition required on its part pursuant to the PIP Agreement, and the PIP Agreement remains valid and enforceable.

69. Dove's acts and omissions described above amount to a breach of Paragraph 1 of the PIP Agreement, pursuant to which Dove agreed to abstain from disclosing or using any of Eclipsys's trade secrets or other confidential, proprietary information gained while working for Eclipsys to the Company's detriment.

70. Dove's acts and omissions described above amount to a breach of Paragraph 6(a) of the PIP Agreement, pursuant to which Dove agreed that following the termination of his employment, he will not solicit or participate in the solicitation of Eclipsys' customers or potential customers or provide or participate in the provision of competing software and services to Eclipsys' customers or potential customers.

71. Dove's acts and omissions described above amount to a breach of Paragraph 6(c) of the PIP Agreement, pursuant to which Dove agreed that following the termination of his employment, he will not disclose any Confidential Information concerning any vendor or client used by or served by Eclipsys at any time during the last 24 months of his employment with Eclipsys.

72. Dove's acts and omissions described above amount to a breach of Paragraph 6(e) of the PIP Agreement, pursuant to which Dove agreed to abstain from participating in the research, development or product management of any software that is or is intended to be directly competitive in the marketplace with software for which he had direct research, development or product management responsibilities during the last 24 months of his employment with Eclipsys.

73. As a direct, proximate, reasonable, and foreseeable result of Dove's breaches of contract, Eclipsys has suffered and will continue to suffer irreparable harm for which

no adequate remedy at law exists. Eclipsys is entitled to preliminary and permanent injunctive relief enjoining Dove from all acts and omissions in violation of the Employment Agreement and PIP Agreement, including, but not limited to, Dove's breaches or further breaches of the covenants and obligations set forth above.

74. In addition, implied in the Employment Agreement and the PIP Agreement is a covenant of good faith and fair dealing, which obligates each party to act so as not to materially deprive the other of the benefits of the agreement.

75. Dove has breached the covenant of good faith and fair dealing inherent in the Employment Agreement and the PIP Agreement by, among other things, seeking and accepting employment surreptitiously with Microsoft's Health Solutions Group, a business that is in direct competition with Eclipsys and seeks to usurp Eclipsys's corporate opportunities.

76. Dove's actions were particularly egregious, insofar as, during his exit questionnaire, he deliberately failed to disclose and misled Eclipsys in response to inquiries regarding his further employment intentions. Such conduct reveals Dove's willingness to breach the Employment Agreement and the PIP Agreement, including the implied covenants and obligations inherent in those agreements, and to do so with the intention of disguising his new employment plans.

77. As a direct, proximate, reasonable, and foreseeable result of Dove's breach of the covenant of good faith and fair dealing, Eclipsys has suffered and will continue to suffer irreparable harm for which no adequate remedy at law exists. Eclipsys is thereby entitled to a preliminary and permanent injunction enjoining and restraining Dove from his continued and threatened breaches.

78. **WHEREFORE**, Plaintiff Eclipsys prays for the following relief on Count 1:

(a) That the Court enter a judgment in favor of Eclipsys and against Defendant Dove.

(b) That the Court issue a preliminary and permanent injunction against Dove, restraining him, for the duration of such period as the Court sees reasonable, from all acts and omissions in violation of the Employment Agreement and PIP Agreement, including, but not limited to:

(i) participating in the research or development of any software that is or is intended to be directly competitive in the marketplace with software for which Dove had direct research or development responsibilities during his employment with Eclipsys;

(ii) participating in the provision of competing or similar software and services to hospitals and health groups that are customers or potential customers of Eclipsys;

(iii) threatening to misappropriate, disclose and/or use any of Eclipsys's trade secrets or other confidential and/or proprietary information;

(iv) misappropriating, disclosing and/or using any of Eclipsys's trade secrets or other confidential and/or proprietary information;

(v) disclosing any confidential information concerning any vendor or client used by or served by Eclipsys learned by Dove during his employment with Eclipsys; and

(vi) pursuant to Paragraph 6(b) of the PIP Agreement, raiding or soliciting or attempting to persuade to leave the employ of Eclipsys, or assisting any third party, directly or indirectly, to raid, solicit, attempt to persuade to leave the employ of Eclipsys, or hiring any employee of Eclipsys, who possesses confidential information or about whom Dove learned confidential information, including without limitation related to assigned responsibilities, employment qualifications, expertise, performance, or compensation, during or as a result of Dove's employment with Eclipsys; or interfering with the performance by any such persons of their duties for Eclipsys; or communicating with any such persons for the purposes described above.

(c) That Dove be ordered to return to Eclipsys' counsel within 24 hours all property, documents, files, reports, and/or other materials that he has in his possession, custody, or control that were obtained from or otherwise belong to Eclipsys;

(d) That Dove be enjoined from destroying any documents of any kind, whether in written or electronic form, that relate in any way to Eclipsys' employment and/or Microsoft's employment of Dove;

(e) That the Court order Defendant Dove to pay to Eclipsys compensatory damages in an amount to be determined at trial;

(f) That the Court order Defendant Dove to pay to Eclipsys both the costs of this action and reasonable attorneys' fees incurred by Eclipsys in prosecuting this action, pursuant to Paragraph 9 of the PIP Agreement.

(g) That the Court order Defendant Dove to pay to Eclipsys interest at the legal rate.

(h) For such other and further relief as the Court may deem just and proper.

**COUNT 2**

**MISAPPROPRIATION OF TRADE SECRETS**

**PURSUANT TO 12 Pa. C.S.A. § 5301, *et seq.***

79. Eclipsys repeats and realleges each and every allegation contained in Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80. As a condition of the Employment Agreement and the PIP Agreement, Dove agreed to maintain the confidentiality of any trade secrets and confidential and/or proprietary information developed or obtained by him for as long as he was employed by Eclipsys and beyond. Eclipsys' policies set forth in the Employee Handbook further require employees to maintain the confidentiality of sensitive and proprietary information.

81. Eclipsys possesses and has developed trade secrets, which have economic value insofar as their potential to provide enormous benefits to the healthcare software business and contain information that is not generally known, and not readily ascertainable by proper means, within the trade, and represent the product of years of research, development and investment. By virtue of the steps, among others, identified above, Eclipsys made reasonable

efforts to ensure that these trade secrets remained a secret.

82. Based on information and belief, Dove's conduct threatens to disclose or Dove inevitably will disclose Eclipsys' trade secrets to Microsoft and/or others for his and/or Microsoft's financial gain in the course of working to develop or improve Microsoft's products that compete with Eclipsys, and in the course of establishing and building Microsoft's presence in the market in which Microsoft and Eclipsys compete.

83. Based on information and belief, Dove has used or inevitably will use Eclipsys' trade secrets for his and/or Microsoft's financial gain in the course of working to develop or improve Microsoft's products that compete with Eclipsys, and in the course of establishing and building Microsoft's presence in the market in which Microsoft and Eclipsys compete.

84. As a proximate result of Dove's misappropriation of Eclipsys's trade secrets, Eclipsys has been deprived of competitive benefits and suffered significant and irreparable harm, and Dove has been unjustly enriched at Eclipsys' expense.

85. On information and belief, Dove's conduct was willful and malicious insofar as, for economic gain, he willfully and deliberately, and with reckless indifference to the rights of others, breached the provisions of the Employment Agreement and the PIP Agreement that he agreed to abide by.

86. Dove, knowing that his disclosures were intended to improve his economic prospects to the detriment of Eclipsys, attempted to cover his tracks by providing inaccurate and incomplete responses to persons inquiring on behalf of Eclipsys as to the identity of his subsequent employment.

87. Given Dove's conduct, Eclipsys is entitled to punitive damages and enhanced damages against Dove, including the costs of this action and reasonable attorneys' fees incurred by Eclipsys in prosecuting this action, pursuant to the Pennsylvania's Uniform Trade Secrets Act.

88. Dove's conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to Eclipsys as described above. Eclipsys has no adequate monetary remedy for this injury, as Dove will continue to disclose and/or use Eclipsys's trade secrets and other confidential and proprietary information in the absence of injunctive relief.

89. **WHEREFORE**, Plaintiff Eclipsys prays for the following relief on Count 2:

(a) That the Court enter a judgment in favor of Eclipsys and against Defendant Dove.

(b) That the Court issue a preliminary and permanent injunction against Dove and any person or entity acting in concert with him, restraining them disclosing, using, or otherwise misappropriating for their own use or benefit any of Eclipsys' trade secrets or other confidential and proprietary information.

(c) That Dove and any person or entity acting in concert with him be ordered to return to Eclipsys' counsel within 24 hours all property, documents, files, reports, and/or other materials that he has in his possession, custody, or control that were obtained from or otherwise belong to Eclipsys;

(d) That Dove and any person or entity acting in concert with him be enjoined from destroying any documents of any kind, whether in written or electronic form, that relate in any way to Eclipsys' employment and/or Microsoft's employment of Dove;

(e) That the Court order Defendant Dove to pay to Eclipsys monetary damages, according to proof at trial, including compensatory, exemplary, enhanced and punitive damages.

(f) That the Court order Defendant Dove to pay to Eclipsys both the costs of this action and reasonable attorneys' fees incurred by Eclipsys in prosecuting this action pursuant to Pennsylvania's Uniform Trade Secrets Act.

(g) That the Court order Defendant Dove to pay to Eclipsys interest at the legal rate.

(h) For such other and further relief as the Court may deem just and proper.

## COUNT 3

## BREACH OF FIDUCIARY DUTY

90. Eclipsys repeats and realleges each and every allegation contained in Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91. As a senior employee of Eclipsys, Dove owed Eclipsys fiduciary duties, including a duty of loyalty, to Eclipsys.

92. Dove's acts and omissions, as described above, constitute a breach of his fiduciary duties, including his duty of loyalty, to Eclipsys.

93. As a direct, proximate, reasonable, and foreseeable result of Dove's breach of his fiduciary duties, Eclipsys has suffered and will continue to suffer irreparable harm for which no adequate remedy at law exists. Eclipsys is thereby entitled to a preliminary and permanent injunction enjoining and restraining Dove from his continued breaches.

94. **WHEREFORE**, Plaintiff Eclipsys prays for the following relief on Count 3:

(a) That the Court enter a judgment in favor of Eclipsys and against Defendant Dove.

(b) That the Court issue a preliminary and permanent injunction against Dove, restraining him, for the duration of such period as the Court sees reasonable, from all acts and omissions in violation of the Employment Agreement and PIP Agreement, including, but not limited to:

(i) participating in the research or development of any software that is or is intended to be directly competitive in the marketplace with software for which Dove had direct research or development responsibilities during his employment with Eclipsys;

(ii) participating in the provision of competing or similar software and services to hospitals and health groups that are customers or potential customers of Eclipsys;

(iii) threatening to misappropriate, disclose and/or use any of Eclipsys's trade secrets or other confidential and/or proprietary information;

(iv) misappropriating, disclosing and/or using any of Eclipsys's trade secrets or other confidential and/or proprietary information;

(v) disclosing any confidential information concerning any vendor or client used by or served by Eclipsys learned by Dove during his employment with Eclipsys; and

(vi) pursuant to Paragraph 6(b) of the PIP Agreement, raiding or soliciting or attempting to persuade to leave the employ of Eclipsys, or assisting any third party, directly or indirectly, to raid, solicit, attempt to persuade to leave the employ of Eclipsys, or hiring any employee of Eclipsys, who possesses confidential information or about whom Dove learned confidential information, including without limitation related to assigned responsibilities, employment qualifications, expertise, performance, or compensation, during or as a result of Dove's employment with Eclipsys; or interfering with the performance by any such persons of their duties for Eclipsys; or communicating with any such persons for the purposes described above.

(c) That Dove be ordered to return to Eclipsys' counsel within 24 hours all property, documents, files, reports, and/or other materials that he has in his possession, custody, or control that were obtained from or otherwise belong to Eclipsys;

(d) That Dove be enjoined from destroying any documents of any kind, whether in written or electronic form, that relate in any way to Eclipsys' employment and/or Microsoft's employment of Dove;

(e) That the Court order Defendant Dove to pay to Eclipsys compensatory damages in an amount to be determined at trial;

(f) That the Court order Defendant Dove to pay to Eclipsys both the costs of this action and reasonable attorneys' fees incurred by Eclipsys in prosecuting this action.

(g) That the Court order Defendant Dove to pay to Eclipsys interest at the legal rate.

(h) For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial on all issues triable to a jury.

Dated: August 31, 2009

Respectfully submitted,

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP
Paul G. Nofer (52241)
260 S. Broad Street
Philadelphia, PA 19102
(215) 569-3287

LATHAM & WATKINS LLP
Bob Steinberg
Franklin D. Kang
Charles Courtenay

By /s/ Paul G. Nofer (pgn3057)
Paul G. Nofer

Attorneys for Plaintiff Eclipsys Corporation